## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN RE: | ) | BK 15-80698-TLS |
| | ) | |
| TAMERA MONIQUE SPURLOCK, | ) | CHAPTER 13 |
| | ) | |
| Debtor. | ) | |

## MOTION FOR RELIEF FROM CO-DEBTOR STAY
## PROVIDED IN *11 U.S.C. 1301*

Comes now the secured creditor Rushmore Loan Management Services LLC, as servicer for Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, as trustee for Normandy Mortgage Loan Trust, Series 2013-17 ("Movant"), and pursuant to *United States Bankruptcy Rule 4001* and *11 U.S.C. 362(a),* moves this Court for an Order granting Movant Relief from the Co-debtor Stay provided in *11 U.S.C. 1301*. In support of its said Motion, Movant states and alleges as follows:

1.     Movant is a secured creditor in the above captioned bankruptcy proceeding.

2.     The debtor Tamera Monique Spurlock was at all times pertinent hereto a resident of Omaha, Nebraska.

3.     Sche S. Spurlock ("co-debtor") is not a party to this bankruptcy proceeding but is a co-borrower on the Note and Deed of Trust referenced hereinafter.    Sche S. Spurlock was at all times pertinent hereto a resident of Omaha, Nebraska.

4.     On or about November 11, 1999, the debtor and co-borrower executed an Adjustable Rate Note ("Note") secured by a Deed of Trust for their real property located at 5401 N 48th St., Omaha, NE 68104 (hereinafter "Property").    A photocopy of the Note and Deed of Trust are attached hereto, marked Exhibits "A" and "B", respectively, and incorporated herein by this reference.

5.      Rushmore Loan Management Services LLC services the loan on the Property referenced in this Motion.  In the event the automatic stay in this case is modified, this case dismisses, and/or the debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Movant or Movant's successor or assignee.  Movant, directly or through an agent, has possession of the Note.  The Note is either made payable to Movant or has been duly endorsed.  Movant is the original mortgagee or beneficiary or the assignee of the Deed of Trust.

6.      Movant has not received the payments from the debtor or co-debtor that have accrued under the terms of the Note.  A photocopy of the payment history is attached hereto, marked Exhibit "C" and incorporated herein by this reference.

7.      On or about April 20, 2015, the debtor filed for Relief under Chapter 13 of the *United States Bankruptcy Code* with the United States Bankruptcy Court for the District of Nebraska.  Pursuant to *11 U.S.C. 362(a)*, the filing of the debtor's original bankruptcy petition operated as an automatic stay against Movant's rights to protect its interest in the Subject Property.

8.      A continuation of the Automatic Stay provided in *11 U.S.C. 362(a)* will cause real and irreparable harm to Movant and will deprive Movant of the adequate protection to which it is entitled and cause does exist for the lifting of the Co-Debtor Stay provided in *11 U.S.C. 1301* for the following reasons among others:

(a)     The debtor and co-debtor are in default of their Note with Movant in that they have not made the payments which have accrued on the Note;

(b)     Upon information and belief, the debtor does not have the necessary funds to adequately maintain the Subject Property.

9.      Movant also exerts that cause exists for the lifting of the Stay provided in *United States Bankruptcy Rule 4001(a)(3)*, thus allowing the requested Order for Relief to immediately be effective should the Court grant Movant's request for Relief.

WHEREFORE, Movant prays this Court for an Order:

(a)      Granting it Relief from the Co-debtor Stay provided in *11 U.S.C. 1301*;

(b)      Requesting that the Trustee abandon the Subject Property;

(c)      Waiving the "Stay" provided in the *United States Bankruptcy Rule 4001(a)(3)*;

(d)      To take such actions with respect to the real property as are set forth under applicable non-bankruptcy law (i.e. modifications, short sales and other loss mitigation options); and

(e)      For such other and further relief as the Court deems just and proper.

RUSHMORE LOAN MANAGEMENT SERVICES LLC, as servicer for Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, as trustee for Normandy Mortgage Loan Trust, Series 2013-17, Movant,

By */s/ Michael J. Whaley*
         Michael J. Whaley, #19390
         GROSS & WELCH, P.C., L.L.O.
         1500 Omaha Tower
         2120 South 72nd Street
         Omaha, Nebraska 68124
         Telephone:   (402) 392-1500
         Facsimile:    (402) 392-8101
         mwhaley@grosswelch.com
         Attorneys for Movant.

12532-tbfi/#6991688

# Exhibit

## "A"

# ADJUSTABLE RATE NOTE
## (LIBOR Index - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| November   11,   1999 | ORANGE | CA |
|---|---|---|
| [Date] | [City] | [State] |

5401 N 48TH ST
OMAHA, NE  68104

[Property Address]

### 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $     60,800.00     (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is AMERIQUEST MORTGAGE COMPANY

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of     11.250   %. This interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3.  PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on     January   1,   2000   .
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on     December   1,   2029     , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my payments at:     505 SOUTH MAIN STREET, STE. 6000
ORANGE, CA 92868

or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $     590.53     .   This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

### 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on the first day of     December   1,   2002     , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."

If at any point in time the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding     Seven and One Eighth     percentage point(s) (     7.125     %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percent (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

Initials AMS.
SSS

1of3

**(D) Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than **14.250** % or less than **11.250** %.  Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One** percentage point(s) ( **1.000** %) from the rate of interest I have been paying for the preceding six months.  My interest rate will never be greater than **17.250** % or less than **11.250** %.

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date.  I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change.  The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.  BORROWER'S RIGHT TO PREPAY**
I may repay this Note at any time as provided for in this paragraph.  If, within five (5) years from the date of the execution of the Mortgage or Deed which secures this Note, I make a voluntary or involuntary prepayment during any consecutive twelve (12) month period of any amount in excess of twenty percent (20%) of the original principal amount of this Note, I agree to pay a prepayment charge equal to six (6) months advance interest on all amounts paid in excess of my scheduled monthly payments that have come due as of the date of prepayment.

**6.  LOAN CHARGES**
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me.  The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me.  If a refund reduces the principal, the reduction will be treated as a partial prepayment.

**7.  BORROWER'S FAILURE TO PAY AS REQUIRED**
**(A) Late Charges for Overdue Payments**
If the Note Holder has not received the full amount of any monthly payment by the end of **fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder.  The amount of the charge will be **6.000** % of my overdue payment of principal and interest.  I will pay this late charge promptly but only once on each late payment.

**(B) Default**
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount.  The date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver by Note Holder**
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law.  Those expenses include, for example, reasonable attorneys' fees.

**8.  GIVING OF NOTICES**
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that different address.

**9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**
If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed.  Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things.  Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note.  The Note Holder may enforce its rights under this Note against each person individually or against all of us together.  This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.  WAIVERS.**
I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor.  "Presentment" means the right to require the Note Holder to demand payment of amounts due.  "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

Initials: _____

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions.  In addition, to the protections given to the Note Holder under this Note, A Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note.  That the Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note.  Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower.  If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without the Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.  Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonable determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition of Lender's consent to the loan assumption.  Lender may also require the transferee to sign an assumption agreement that is acceptable to lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument.  Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 12. GOVERNING LAW PROVISION

This Note and the related Security Interest are governed by the Alternative Mortgage Transaction Parity Act of 1982, 12 USC §3802 et. seq., and, to the extent not inconsistent therewith, Federal and State law applicable to the jurisdiction of the Property.

Oral agreements, promises or commitments to lend money, extend credit, or forbear from enforcing repayment of a debt, including promises to extend, modify, renew or waive such debt, are not enforceable.  This written agreement contains all the terms the Borrower(s) and the Lender have agreed to.  Any subsequent agreement between us regarding this Note or the instrument which secures this Note, must be in a signed writing to be legally enforceable.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Tamera M Spurlock_ (Seal)
TAMERA M SPURLOCK -Borrower

_S. S. S+C_ (Seal)
SCHE S SPURLOCK -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

Prepared by: Joe Simmons
When Recorded Mail To:
Ocwen Loan Servicing, LLC
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Phone Number: 561-682-8835

## ALLONGE

**BORROWERS: TAMERA M. SPURLOCK AND SCHE S. SPURLOCK**

**PRESENTOWNER AND HOLDER: OCWEN FEDERAL BANK FSB**

**NOTE EXECUTION DATE: NOVEMBER 11, 1999**

**NOTE AMOUNT: $ 60,800.00**

This allonge shall be annexed to the original Note, referenced above for purposes of transferring same from the present Owner and Holder of the Note, OCWEN FEDERAL BANK FSB ("Transferor") as of the date set forth below. As a result of said transfer, OCWEN FEDERAL BANK FSB has no further interest in the Note.

Pay to the order of

**LEHMAN CAPITAL, A DIVISION OF LEHMAN BROTHERS HOLDINGS, INC.,**
without recourse, representation or warranty express or implied.

**OCWEN FEDERAL BANK FSB**
**BY IT'S ATTORNEY-IN-FACT**
**OCWEN LOAN SERVICING, LLC**

By: _____
Name: _____ Joel Piras _____
Title: Contract Manager

963050024325
ATTORNEY CODE: 00282 BR

## NOTE ALLONGE

Loan Number:    ████████████

Borrower Name:      **SPURLOCK, TAMERA M**

Co-Borrower Name:   **SPURLOCK, SCHE S**

Property Address:   **5401 N 48TH ST, OMAHA, NE 68104**
Original Note Date:   **11/11/1999**

Original Note Amount:  **$60,800.00**

PAY TO THE ORDER OF:

**CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE FOR
NORMANDY MORTGAGE LOAN TRUST, SERIES 2013-17**

Without Recourse,

**LEHMAN BROTHERS HOLDINGS, INC. SUCCESSOR BY MERGER TO LEHMAN CAPITAL** , by
CARRINGTON MORTGAGE SERVICES LLC., AS ATTORNEY IN FACT
BY: _____
Print Name:
Title:    Greg Schleppy, Sr. Vice President

# Exhibit

# "B"



RICHELLE N. TAKECHI
REGISTER OF DEEDS
DOUGLAS COUNTY, NE

99 DEC 2  PH 2: 25

RECEIVED

Prepared by:
When recorded, mail to:

AMERIQUEST MORTGAGE COMPANY
P.O. BOX 11507
SANTA ANA, CA 92711

FB
BXP_____ C/O _____ COMP
OEI_____ SCAN_____ FV

[Space Above This Line For Recording Data]

## DEED OF TRUST

THIS DEED OF TRUST ("Security Instrument") is made on    November   11 ,  1999          . The trustor is
TAMERA M SPURLOCK and SCHE S SPURLOCK, WIFE AND HUSBAND

("Borrower"). The trustee is      FIDELITY NATIONAL INSURANCE CO

("Trustee"). The beneficiary is    AMERIQUEST MORTGAGE COMPANY

which is organized and existing under the laws of    the State of Delaware                    , and whose
address is    1100 TOWN & COUNTRY RD., STE. 200
            ORANGE, CA 92868                     ("Lender"). Borrower owes Lender the principal sum of
    Sixty Thousand Eight Hundred and no/100----------------------------
                                            Dollars (U.S. $     60,800.00      ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for
monthly payments, with the full debt, if not paid earlier, due and payable on    December    1 ,  2029-
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals,
extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to
protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements. For this
purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property
located in                            DOUGLAS                        County, Nebraska:

    LOT SIX(6)BLOCK SBVEN(7),HARGLEROAD SECOND ADDITION IN DOUGLAS COUNTY, NEBRASKA

MORTGAGE INFORMATION SERVICES, INC.
11059 W. MAPLE ROAD, SUITE D
OMAHA NEBRASKA 68164

which has the address of    5401 N 48TH ST                            OMAHA                  [Street, City],
Nebraska        68104            [Zip Code]  ("Property Address");
NEBRASKA -Single Family-FNMA/FHLMC UNIFORM
            INSTRUMENT  Form 3028 9/90
-6HINE) (9801).02                    Amended 12/83
    VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 8                                    Initial  MS
ACD-UCB (REV 3/99)                                SCS

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

Form 3028   9/90

5. **Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7. **Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. **Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve


400-1NE (REV 03/98)



Page 3 of 6

Form 3028   9/90
Initials: ___

SSS

payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

 -6H(NE) (9403).02
400-4NS (REV 02/93)

Page 4 of 6

Form 3028   9/80
Initials: 

17. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. **Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. **Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

20. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

21. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If the power of sale is invoked, Trustee shall record a notice of default in each county in which any part of the Property is located and shall mail copies of such notice in the manner prescribed by applicable law to Borrower and to the other persons prescribed by applicable law. After the time required by applicable law, Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Upon receipt of payment of the price bid, Trustee shall deliver to the purchaser Trustee's deed conveying the Property. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all costs and expenses of exercising the power of sale, and the sale, including the payment of the Trustee's fees actually incurred, not to exceed    FEES?    % of the principal amount of the note at the time of the declaration of default, and reasonable attorneys' fees as permitted by law; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

22. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under applicable law.

23. Substitute Trustee. Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

24. Request for Notices. Borrower requests that copies of the notices of default and sale be sent to Borrower's address which is the Property Address.

25. Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

[X] Adjustable Rate Rider    [ ] Condominium Rider    [ ] 1-4 Family Rider
[ ] Graduated Payment Rider    [ ] Planned Unit Development Rider    [ ] Biweekly Payment Rider
[ ] Balloon Rider    [ ] Rate Improvement Rider    [ ] Second Home Rider
[ ] VA Rider    [ ] Other(s) [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.
Witnesses:

_____   _Tamera M Spurlock_____ (Seal)
                                                             TAMERA M SPURLOCK             -Borrower

_____   _____ (Seal)
                                                               SCHE S SPURLOCK               -Borrower

_____ (Seal)   _____ (Seal)
                                -Borrower                                                 -Borrower

STATE OF NEBRASKA,
                                        Douglas County ss:
   The foregoing instrument was acknowledged before me this  11  day of  November  , 1992 ,
by Tamera M Spurlock a Sche S Spurlock, Wife + Husband
   Witness my hand and notarial seal at  340 north 48th street omaha NE in said County, the date aforesaid.

My Commission Expires:                                _____
                                                     Notary Public

SHERMAN GOULD
General Notary
State of Nebraska
My Commission Expires Mar 8, 2003

# ADJUSTABLE RATE RIDER

### (LIBOR Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this    11th    day of       November      ,
1999    , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of
Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Adjustable Rate Note (the "Note") to      AMERIQUEST MORTGAGE COMPANY
(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

**5401 N 48TH ST
OMAHA, NE  68104**

[Property Address]

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE
TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower, and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of      11.250     %. The Note provides for changes in the
interest rate and the monthly payments, as follows:

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of      December     ,    2002    , and on that
day every sixth month thereafter.  Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the average
of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as
published in *The Wall Street Journal*.  The most recent Index figure available as of the date 45 days before each
Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable
information.  The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding     Seven and One
Eighth                                      percentage points(s) (     7.125       %) to
the Current Index.  The Note Holder will then round the result of this addition to the nearest one-eighth of one
percentage point (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my
new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay
the unpaid principal that I am expected to owe a the Change Date in full on the Maturity Date at my new interest
rate in substantially equal payments.  The result of this calculation will be the new amount of my monthly
payment.

---

**ADJUSTABLE RATE RIDER - LIBOR INDEX**        Page 1 of 2        Initials

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 14.250 % or less than 11.250 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One percentage point(s) ( 1.000 %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 17.250 % or less than 11.250 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 17 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
TAMERA M SPURLOCK          -Borrower

_____ (Seal)
SCHE S SPURLOCK            -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

ADJUSTABLE RATE RIDER - LIBOR INDEX          Page 2 of 2          Initials:

1956009 (6/1/97) TLO

600-2 (REV. 2/98)

BK 6334 PG 558-558

ASS    2001 02750

REGISTER OF DEEDS
DOUGLAS COUNTY, NE

01 APR -5 AM 8: 48

RECEIVED

Space Above This Line for Recording Information

Please return to:
Eric H. Lindquist
Abraham Kaslow & Cassman LLP
8712 West Dodge Road, Suite 300
Omaha, NB 68114
Telephone (402) 392-1250

36098

ASS   5 2     99-15320
FEE        FB
BKP        C/O      COMP
DEL        SCAN     FV

## ASSIGNMENT OF DEED OF TRUST

For value received, the undersigned hereby grants, assigns and transfers to Ocwen Federal Bank, FSB, all of its beneficial interest under that certain deed of trust dated November 11, 1999, executed by Tamera M. Spurlock and Sche S. Spurlock, wife and husband, as Trustors, in which Fidelity National Insurance Company is named as Trustee for the benefit of Ameriquest Mortgage Company, Beneficiary, which was recorded on December 2, 1999 in Book 5905 at Page 666 of the Mortgage Records of Douglas County, Nebraska, said deed of trust conveying the following described property:

LOT SIX (6) BLOCK SEVEN (7), HARGLEROAD SECOND ADDITION IN OMAHA, DOUGLAS COUNTY, NEBRASKA.

Executed this 27 day of March , 2001.

(SEAL)

RUSH

AMERIQUEST MORTGAGE COMPANY,
Beneficiary
By:  OCWEN FEDERAL BANK, FSB,
Attorney-in-Fact

By: Pamela Adams

Title: Default Servicing Liaison

STATE OF FLORIDA        )
                        ) SS.
COUNTY OF   PALM BEACH  )

The foregoing instrument was acknowledged before me this 23th day of March 2001 by Pamela Adams , Default Servicing Liaison of Ocwen Federal Bank, FSB, Attorney-in-Fact for Ameriquest Mortgage Company, Beneficiary.

James Richards
Notary Public

My Commission expires:

JAMES RICHARDS
MY COMMISSION # CC 869560
EXPIRES: September 7, 2003
Bonded Thru Notary Public Underwriters

JRZ/223250.1

ASS    2015015056

Fee amount: 10.00
FB: 54-15320
COMP: AH

MAR 03 2015 13:12 P 1

Received – DIANE L. BATTIATO
Register of Deeds, Douglas County, NE
03/03/2015 13:12:53.00

2015015056

APN #: 3153-0000-12
Prepared by: Joe Simmons
When Recorded Mail To:
Ocwen Loan Servicing, LLC
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Phone Number: 561-682-8835
7130030024339
Attorney code: 00283 BR

## ASSIGNMENT OF DEED OF TRUST
### NEBRASKA

This ASSIGNMENT OF DEED OF TRUST from OCWEN FEDERAL BANK FSB, whose address is c/o Ocwen Loan Servicing, LLC, 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409 ("Assignor") to LEHMAN CAPITAL, A DIVISION OF LEHMAN BROTHERS HOLDINGS, INC. whose address is c/o Ocwen Loan Servicing, LLC, 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409 ("Assignee").

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Assignor does by these presents hereby grant, bargain, sell, assign, transfer and set over unto the Assignee, its successors, transferees and assigns forever, all of the rights title and interest of said Assignor in and to the following instrument describing land therein, duly recorded in the Office of the Register of Deeds of DOUGLAS County, State of NEBRASKA, as follows:

Mortgagor/Trustor: TAMERA M. SPURLOCK AND TAMERA M. SPURLOCK
Mortgagee/Beneficiary: AMERIQUEST MORTGAGE COMPANY
Trustee: FIDELITY NATIONAL INSURANCE CO.
Document Date: NOVEMBER 11, 1999
Amount: $ 60,500.00
Date Recorded: DECEMBER 03, 1999
Book/Volume/Docket/Liber: 5905
Page/Folio: 666
Property Address: 5401 NORTH 48TH STREET, OMAHA, NE 68104-1500
LEGAL DESCRIPTION:

LOT SIX(6),BLOCK SEVEN(7),HARGLEROAD SECOND ADDITION IN DOUGLAS COUNTY, NEBRASKA

This Assignment is made without recourse, representation or warranty.

IN WITNESS WHEREOF, the undersigned has executed this Assignment at Palm Beach, Florida, this 26TH day of JUNE, 2013.

OCWEN FEDERAL BANK FSB
BY IT'S ATTORNEY-IN-FACT
OCWEN LOAN SERVICING, LLC

BY:

NAME:    Joel Pires
TITLE:    Contract Manager

STATE OF FLORIDA            )
                                         )SS.
COUNTY OF PALM BEACH    )

The foregoing instrument was acknowledged before me this 26TH day of JUNE, 2013, by _____ Joel Pires _____ Contract Manager at OCWEN LOAN SERVICING, LLC ATTORNEY-IN-FACT FOR OCWEN FEDERAL BANK FSB on behalf of the company. He/She is personally known to me.

Notary Public State of Florida
Debra Spruill
My Commission EE 187048
Expires 05/08/2016

Notary Signature –    Debra Spruill

ASS    2015015057

Fee amount:  16.00
FB: 54-15320
COMP: AH

Received by - DIANE L. BATTIATO
Register of Deeds, Douglas County, NE
02/03/2015 13:12:53.00

2015015057

MAR 03 2015 13:12 P  2

**PREPARED BY: RMAC**
**AFTER RECORDATION RETURN TO:**
RMAC
1755 WITTINGTON PLACE #400
DALLAS, TX 75234
ATTN: COLLATERAL

LOAN #: ▮▮▮▮▮▮▮    **ASSIGNMENT OF DEED OF TRUST**
**FOR VALUABLE CONSIDERATION:**
**ASSIGNOR:**                LEHMAN BROTHERS HOLDINGS, INC.
**ASSIGNOR'S ADDRESS:**      1271 AVENUE OF THE AMERICA, 39TH FLOOR, NEW YORK,
                            NY 10020
**HEREBY GRANTS, ASSIGNS, AND TRANSFERS TO:**
**ASSIGNEE:**                CHRISTIANA TRUST, A DIVISION OF WILMINGTON
                            SAVINGS FUND SOCIETY, FSB, AS TRUSTEE FOR
                            NORMANDY MORTGAGE LOAN TRUST SERIES 2013-17
**ASSIGNEE'S ADDRESS:**      500 DELAWARE AVE, 11TH FLOOR, WILMINGTON, DE 19801

**ALL BENEFICIAL INTEREST UNDER THAT CERTAIN DEED OF TRUST:**
**DATED:**                   11/11/1999
**ORIGINAL LOAN AMOUNT:**    $50,800.00
**TRUSTOR/BORROWER:**        TAMERA M. SPURLOCK AND SCHE S SPURLOCK, WIFE
                            AND HUSBAND
**ORIGINAL BENEFICIARY:**    AMERIQUEST MORTGAGE COMPANY
**ORIGINAL TRUSTEE:**        FIDELITY NATIONAL INSURANCE CO

**RECORDED IN THE OFFICIAL REAL PROPERTY RECORDS OF DOUGLAS COUNTY, NEBRASKA**
**RECORDED:** 12/02/1999 IN BOOK/VOLUME/LIBER: 5905 PAGE: 668 DOCUMENT: ---

**PROPERTY SUBJECT TO LIEN:**   5401 N 48TH ST, OMAHA, NE 68104
**LEGAL DESCRIPTION ATTACHED -- EXHIBIT A**

**TOGETHER WITH THE PROMISSORY NOTE SECURED BY SAID DEED OF TRUST AND ALSO ALL**
**RIGHTS ACCRUED OR TO ACCRUE UNDER SAID DEED OF TRUST.**

**DATED:** 2/20/15          LEHMAN BROTHERS HOLDINGS, INC. BY
                            CARRINGTON MORTGAGE SERVICES, LLC., AS
                            ATTORNEY IN FACT

                            BY:
                            NAME: Greg Schleppy, Sr. Vice President
                            TITLE:

---

**ALL-PURPOSE ACKNOWLEDGMENT**

A notary public or other officer completing this certificate verifies only the identity
of the individual who signed the document to which this certificate is attached, and
not the truthfulness, accuracy, or validity of that document

**State of California**
**County of Orange**

On 2/20/15 before me, Irene Torres, Notary Public, personally appeared,
Greg Schleppy, who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity (ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true
and correct.

WITNESS my hand and official seal.

IRENE TORRES
COMMISSION #1974461
Notary Public - California
ORANGE COUNTY
My Commission Expires
APRIL 7, 2016

Signature of Notary                          (seal)

**Exhibit A**

**LOT SIX(6) BLOCK SEVEN(7), HARGLEROAD SECOND ADDITION IN DOUGLAS COUNTY, NEBRASKA**

# Exhibit

# "C"

## SUMMARY OF POST PETITION ARREARAGE

| Date Received | Amount Received | Due Date | Amount Due | Fees Assessed | | Total Due |
|---|---|---|---|---|---|---|
| ----- | ----- | 5/1/2015 | 1,057.39 | | $ | 1,057.3 |
| ----- | ----- | 6/1/2015 | 1,057.39 | | $ | 1,057.3 |
| ----- | ----- | 7/1/2015 | 1,057.39 | | $ | 1,057.3 |
| ----- | ----- | 8/1/2015 | 1,057.39 | | $ | 1,057.3 |
| ----- | ----- | 9/1/2015 | 1,057.39 | | $ | 1,057.3 |
| **TOTALS** | $        - | | $      5,286.95 | $        - | $ | 5,286.9 |

|  |  |
|---|---|
| **Total Post Petition Due Since Filing** | 5,286. |
| **Minus Total Post Petition Paid** |  |
| **Total Post Petition Delinquency** | 5,286. |
| **Post Petition Due Date** | 5/1/20 |
| **Post Petition Payments Due Amount** | 5,286. |
| **Suspense Balance** |  |